IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ALFORD A. FREEMAN                                                                      PLAINTIFF

v.                                    Civil No. 11-3064

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                         DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Alford Freeman, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed his applications for DIB and SSI on August 23, 2007, alleging an onset date of January 1, 2005, due to calcium oxalate (kidney stones, back and neck pain, borderline intellectual functioning, substance abuse, anxiety disorder, mood disorder, and personality disorder. Tr. 106-117, 133, 151-152, 179, 189, 213-234. His applications were initially denied and that denial was upheld upon reconsideration. Tr. 73-79, 82-85. An administrative hearing was held on June 4, 2008, and resulted in an unfavorable decision on September 24, 2008. Tr. 1-37, 63-72, 637-675, 769-805. Ultimately, the case was appealed to this Court, and remanded back to the agency on April 30, 2010. Tr. 753, 754-763, 764-767. A second administrative hearing was held on December 8, 2010. Tr. 676-747. Plaintiff was present and represented by counsel.

At this time, Plaintiff was 28 years of age and possessed a tenth grade education. Tr. 6-7, 680-681, 688. He had no past relevant work experience. Tr. 7, 71, 134, 141-148, 166-172, 194, 214-217, 628.

On May 16, 2011, the Administrative Law Judge ("ALJ") found Plaintiff's borderline intellectual functioning; organic brain disorder, depression, anxiety, kidney stones, and disorder of the back were severe impairments, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 619-622. After partially discrediting Plaintiff's subjective complaints, he determined Plaintiff could perform sedentary work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. Tr. 622-628. With the assistance of a vocational expert, the ALJ concluded Plaintiff could perform work as a machine tenderer, assembler, and inspector. Tr. 629-630.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied. Subsequently, Plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 8, 10.

The court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' appeal briefs and the ALJ's decision and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record

that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

  A.  **The Evaluation Process**:

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply

his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Plaintiff's appeal boils down to two main arguments. He contends that the ALJ erred in concluding that he was not disabled because: 1) the RFC assessment is flawed and 2) the ALJ erred in his step-three burden determination that Plaintiff's impairments did not meet or equal a listed impairment. More particularly, Plaintiff maintains that the RFC assessment is flawed because limiting him to interpersonal contact that is incidental to the work performed does not address the frequency of his contact with others, and because the assessment does not address the chronic pain he suffers due to kidney stones. He also asserts that he meets the requirements for listing 12.02 dealing with organic mental disorders. For the reasons enumerated below, we disagree.

First, we address Plaintiff's argument that the term incidental contact does not address the frequency of his contact with others. By definition, the term incidental means "being likely to ensue as a chance or minor consequence." *See* Miriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/incidental (last assessed January 4, 2013). Legal

4

dictionaries define the term in a similar fashion: "depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed principal." *See* BLACK'S LAW DICTIONARY 762 (6th ed. 1990). Given the evidence indicating that Plaintiff keeps to himself, has only one or two close friends, does not socialize with his family, experiences anxiety in crowds, and has either been fired from or quit previous jobs due to interpersonal conflict, we believe that limiting him to only incidental or infrequent contact with co-workers and/or supervisors adequately addresses his limitations in this area.

Plaintiff also seems to contend that he is incapable of performing the position of machine tenderer, assembler, and inspector, as identified by the vocational expert, because each requires significant interpersonal contact to ask questions or address inevitable problems that might arise with the machines and assembly lines. While we do believe that some interpersonal contact would be required, as is the case with any job, we find no merit in Plaintiff's argument. A review of the Dictionary of Occupational Titles description of each of these positions reveals that they require commonsense understanding to carry out simple and/or detailed but uninvolved written or oral instructions and involve problems with few concrete variables in or from standardized situations. *See* DICTIONARY OF OCCUPATIONAL TITLES §§ 673.685-042, 713.687-026, 726.684.050, www.westlaw.com (Last accessed January 7, 2013). Further, the descriptions indicate that the positions do not require a significant amount of personal interaction or talking. *Id*.

Plaintiff further asserts that the RFC assessment is flawed because it does not include chronic pain related limitations resulting from his kidney stones. He argues that the ALJ relied heavily upon the consultative evaluation of Dr. John Nelson, who he asserts failed to consider Plaintiff's kidney stones. However, a review of Dr. Nelson's evaluation suggests otherwise. On January 29, 2011, Dr. Nelson conducted a physical evaluation of Plaintiff. Tr. 924-927. Plaintiff reported a history of lower back pain, neck pain, head trauma, and excessive kidney stones. And, Dr. Nelson noted that Plaintiff had passed

27 stones since he began experiencing problems with kidney stones in the seventh grade, with the last episode occurring in 2007. Tr. 924. After examining Plaintiff and reviewing his medical records, Dr. Nelson diagnosed him with tobacco abuse, chronic cervical and lower back pain, a history of nephrolithiasis, bipolar disorder, and a history of depression.

The remaining evidence also supports Dr. Nelson's statement that Plaintiff had last experienced a flare up of kidney stones in February 2007, which was approximately four years prior to his examination. Tr. 258-266, 589-595. *See Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (in assessing credibility, the court noted that plaintiff had not sought treatment from any physician in the seven months prior to administrative hearing). And, we note that he was able to work in 2005, 2006, and 2007, albeit sporadically, while he claimed to be suffering from kidney stones. *Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (claimant worked with her impairments for years); *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). He was also able to perform work that rose to the level of substantial gainful activity in 2009 and 2010, with no reported flare-ups of his kidney stones. Tr. 628, 834-848. *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (working after the onset of an impairment is some evidence of an ability to work). Therefore, we find substantial evidence to support the ALJ's determination that Plaintiff's kidney stones were episodic and did not limit his ability to perform basic work activities. Tr. 628.

We also disagree with Plaintiff's contention that a treating physician should have conducted his general examination. For the reasons outlined in the previous paragraph, we fail to see how an assessment from a treating physician would have differed from Dr. Nelson's. It seems clear that Plaintiff's nephrolithiasis was chronic, but episodic in nature. It had been four years since his last treatment for kidney stones. And, we can discern no evidence to indicate that it limited his ability to perform sedentary work.

6

Plaintiff's final argument centers around the requirements of listing 12.02 for organic mental disorders. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted). The regulations state that a diagnosis alone is not enough to satisfy a listed impairment. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d).

The question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted). "The fact that the ALJ d[oes] not elaborate on this conclusion does not require reversal [where] the record supports h[is] overall conclusion." *Id*.

Listing 12.02 requires that Plaintiff meet the requirements of subparagraphs A and B or the requirements of subparagraph C. The pertinent portions of subparagraph A requires a demonstration of a loss of specific cognitive abilities or affective changes and medically documented persistence of at least one of the following: disturbance in mood or emotional lability (e.g. explosive temper outbursts, sudden crying, etc.) and an impairment of impulse control. Subparagraph B, requires at least two of the following: marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration persistence or pace, or repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.02B.

Plaintiff contends that he meets the requirements of subsections A and B. We disagree. While we would agree that he meets the requirements of subsection A, his impairment does not fulfill the requirements of subsection B. The ALJ correctly concluded that Plaintiff had mild restrictions of activities of daily living. In January 2011, Plaintiff advised Dr. Hester that he could drive unfamiliar routes and perform activities of daily living autonomously. Tr. 920. The record also reveals that Plaintiff has reported paying his own bills, shopping for he and his son, caring for his son, caring for his

own personal hygiene, doing the laundry twice per week, mowing the yard once a week, going outside once or twice per day, walking, shopping for clothes and food in stores, playing games with his son, and taking his son to the park. Tr. 153-157, 323-328. He was also able to maintain employment for several months at a time, quitting or losing his job primarily due to conflict with his co-workers/supervisors.

Plaintiff was also found to have only moderate difficulties in social functioning. Although he and his family reported that he was withdrawn and often stayed in his room to avoid conflict, Plaintiff reported having one or two close friends.[1] And, he indicated that he visited with his friends weekly, and often took his son along to play with his friends' children. Tr. 720, 869-870. Therefore, while we do note his history of reported interpersonal conflict and strife with family and employers, it appears as though Plaintiff is capable of interacting socially, when he wants to do so.

The evidence also reveals that Plaintiff had only moderate difficulties with regard to concentration, persistence, and pace. In 2007, Plaintiff presented for a psychological evaluation with Dr. Nancy Bunting, high on marijuana. Dr. Bunting concluded that Plaintiff would have difficulty learning tasks at work if he were high. Likewise, in 2011, Dr. Hester indicated that Plaintiff "might" have difficulty coping with the mental demands of basic work tasks, without treatment. Tr. 920. However, Dr. Hester also indicated that Plaintiff could attend and sustain concentration on basic tasks and sustain persistence in completing tasks. And, Plaintiff's work record also lends some credence to the idea that his ability to concentrate and persist is only moderately limited, as he has been capable of working for months at a time, quitting or being fired due to his own anger management issues.

As for periods of decompensation, the ALJ correctly concluded that Plaintiff had experienced two such episodes. At age 23, Plaintiff was hospitalized at the state hospital for seven days, and in 2006, he attempted suicide by overdosing on Xanax. Tr. 915, 919.

---

[1] We do note his report to Dr. Bunting in 2007 that he had no friends and was not involved in any social groups. Tr. 323, 325.

Therefore, after reviewing all of the evidence, we can not say that Plaintiff meets the requirements of listing 12.02. And, we find substantial evidence supporting the ALJ's conclusion otherwise.

The evidence does make clear that Plaintiff was easily angered or upset when things did not go his way, and that he had some significant anger management issues. However, his failure to receive consistent mental health treatment over the course of the relevant time period is a major impediment to his claim for disability. Tr. 204-207, 298-316. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). He even testified that he had neither been consistent with his treatment nor 100 percent honest with the therapists regarding his problems because he enjoyed his freedom and did not want to be institutionalized. Tr. 699. However, we are expected to believe that he would be both honest and consistent with treatment if he were granted benefits.[2] Tr. 701-702.

And, while we are sympathetic to his parents' testimony regarding the cost of his medical treatment and medications and the burden it has placed on their budget, we also note that Plaintiff has continued to smoke cigarettes and has tested positive for both marijuana and amphetamine use during the relevant time period. Tr. 278-283, 305-308, 310, 311-313, 315, 589-595. *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999). Money that could have been spent on treatment and/or medication. Further, we can discern no indication that he has been refused medical treatment due to his inability to pay or has consistently availed himself of the medical services offered to indigent and/or low income individuals. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992). Accordingly, we can not excuse his failure to obtain consistent treatment.

---

[2]Specifically, Plaintiff stated, ""If I had somebody I could trust and had a way to pay my bills so I could get the help I needed, yes, I would definitely go and try to get my life and my head straight." Tr. 702.

**IV.** **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 8th day of January 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)